# N.

## Case No. 18,310.

### NATIONAL BANK OF COMMERCE v. NATIONAL BANK OF MISSOURI.

[The Public (N. Y.) Oct. 10, 1878, p. 229.]

Circuit Court, D. Missouri. Oct., 1878.

NATIONAL BANKS — POWER TO BORROW MONEY — LOANS TO DIRECTORS.

[A national bank may borrow money for the purpose of lending the same again to others with a view to making a profit. It may lend money, in good faith, without any fraudulent intent, to its directors as well as to others, provided the amount so loaned does not exceed the limitation of one-tenth of the capital stock actually paid in. Therefore one national bank, which loans money to another, knowing that the latter intends to loan the same to its directors, may recover the same from the borrowing bank, if it had no knowledge of any fraudulent intent in making the loans to the directors, even though the directors failed to repay the same.]

[Cited in brief in Seligman v. Charlottesville Nat. Bank, Case No. 12,642.]

This was an action at law by the National Bank of Commerce, of New York, against the National Bank of Missouri, of St. Louis, which suspended in June, 1877, to recover $400,000 and accrued interest, the remainder of a loan of $1,000,000 made by the plaintiff to the defendant. In 1866 James B. Eads, James H. Britton, John J. Roe, Charles K. Dickson, Amos Cotting, Barton Bates, and John A. Ubsdell, the directors of the National Bank of Missouri, borrowed $1,000,000 of the circulating notes of the National Bank of Commerce. The claim for the unpaid balance was presented to the receiver of the defunct bank, and he declined to allow it, on the ground that the bank had not borrowed the money, but that it was borrowed by the above-named directors, and used by them for their individual benefit, and that the bank did not enjoy the advantage of the loan. An attempt was also made to show that the defendant had no right to borrow money to loan again, and that a loan of this character was illegal, and known to the plaintiff to be illegal when made. It was shown, in effect, that when the negotiations with the Bank of Commerce were opened, Mr. Eads and the other gentlemen named were not directors of the State Bank, but by large purchases of the stock became possessors of a majority and elected themselves directors October 31, 1866, and that the loan was completed in the name of the bank by contract dated December 26, 1866, by the newly-elected directors. Testimony was given to show that the loan was made only for the use of the directors, because the bank itself had at the time $1,000,000 in cash and $680,000 in bonds on deposit with the Bank of Commerce, and it was part of the contract that this deposit should remain as security until the loan was paid.

The testimony adduced in the case shows that the $1,000,000 loan was made by the defendant a special account entered in a book entitled "Bank of Commerce, No. 3." The directors gave their check on the funds of the pool and drew out money till it was all exhausted except $3,000, which stands to-day to their credit on the books of the suspended bank. These directors returned to the pool the amount that was paid back to the New York bank,—namely, $600,000,—but had paid back none of the balance of $400,000.

DILLON, Circuit Judge (charging jury). Under the pleadings, the defendant's counsel conceded at the opening of the trial that the plaintiff was entitled to the sum of $400,000 with 6 per cent. interest, amounting in all to the sum of $445,582.10, unless the defendant established one or both of its special defences to the action, and accordingly the defendant assumed the burden of proof to make out such defences. The defendant has accordingly produced its evidence, and at its close the plaintiff's counsel moves the court for a direction to the jury that such evidence has failed to establish these, or either of them, and that, notwithstanding the defendant's evidence, and all inferences which the jury can legitimately or properly draw from it, the plaintiff is entitled to a verdict.

The defences relied on are two:

1. That the contract of December 26, 1866, between the defendant bank and others, and which is the basis of this suit, and under which the $1,000,000 was lent by the plaintiff bank, is ultra vires the lawful power of defendant bank; that is to say, that this contract was one which the defendant bank had no power, under its charter, to make under any circumstances, or, at all events, had no power to make except in case the situation and exigency of its affairs required it to borrow money, and that its situation was such that it did not need to borrow this large sum of money, or any other sum of money, and that knowledge of this fact is, by the evidence, fairly brought home to the plaintiff bank. I am of opinion that a national banking association has, under the national banking act [13 Stat. 99], the power to borrow money, and that the defendant bank, in the absence of fraud brought to the knowledge of plaintiff bank, had the power to enter into the contract of December 26, 1866, which is the foundation of this action. The legal power of the bank to borrow money does not depend upon any exigency or upon the existence of a critical condition of its affairs, or upon an actual necessity for the immediate use of the sum borrowed. It may borrow money to conduct and carry on the business of banking, and it may borrow for the express purpose of lending the

same, either by discounting the notes, bills, etc., of others or on personal security, with a view to profit by the transaction. The loan of money to a national bank is not invalid because the lender may know or have reason to believe that the borrowing bank intends to lend it, when received, to others. A national bank may lend its money to its directors as well as to other persons, provided it acts in good faith and does not exceed the limitation to any one person or director of "one-tenth part of the amount of the capital stock of the association actually paid in." There is no claim that this limitation was exceeded in this case, as the capital stock of the bank was $3,410,000 actually paid in. If the law were that a national bank could not borrow money for the purpose of lending the same again to its directors, and that if the lender knew that such was the purpose of the borrowing bank, the transaction would necessarily be invalid. I admit that the evidence in the case is such as to justify the court to submit the question of the plaintiff's knowledge of such a purpose to the jury. But I am of opinion that where no fraud is intended a national bank may lend its money to its directors, and the fact that the lender knows, or has reason to believe, that when the money he lends is received it will be lent to the directors, does not, unless he knows, or has good reason to believe, that a fraudulent use or disposition of it is contemplated by the directors when received, invalidate the transaction. The directors had no more power over the $1.000,000 obtained under the contract in suit than they had over the $1,000.000 which the defendant bank had on ordinary deposit with the plaintiff bank, or over the $3,000,000 of capital actually paid in. A lender cannot knowingly aid an intended fraud, but he is not required not to lend because the borrowing bank may misuse their powers.

2. The second defence is that the money was procured by the defendant's directors (who signed the contract in suit professedly as sureties), not for the bank, but for their own purposes, and that they fraudulently made use of the name of the defendant bank as principal, intending all the time illegally to appropriate the money, when received, to their own use, and that the plaintiff bank had knowledge of such intended illegal appropriation of the money. These facts, if established, would constitute a defence, but after carefully considering all of the evidence touching this matter, I think that while it would justify the jury in finding that the directors of the defendant bank, when the money was received, intended to borrow the same from the bank of which they were directors, and thus get the use of it, I can see no basis in the evidence which would justify the jury in finding that the plaintiff bank knew that the directors of the defendant bank, when the money was received, intended to make any fraudulent use or disposition of it. If the jury should so find, I shall deem it my duty to set aside their verdict, and hence there is no propriety in uselessly submitting this question to them. I therefore instruct you, gentlemen of the jury, that the defences relied on have failed, and that you shall return a verdict for the plaintiff.

The jury brought in a verdict in favor of plaintiff for $445,582. The case has been appealed to the United States supreme court, the receiver of the National Bank of Missouri having been made a party defendant.

---

NATIONAL BANK OF MISSOURI (NATIONAL BANK OF COMMERCE v.). See Case No. 18,310.

NATIONAL BANKS—CHARGE TO GRAND JURY IN RELATION TO FRAUDS OF OFFICERS OF NATIONAL BANKS. See Case No. 18,246.

NEUTRALITY LAWS — CHARGE TO GRAND JURY IN RELATION TO NEUTRALITY LAWS. See Cases Nos. 18,264–18,269.

---

# O.

OFFICERS—CHARGE TO GRAND JURY IN RELATION TO FRAUDS OF OFFICERS OF NATIONAL BANKS. See Case No. 18,246.